STATE OF INDIANA
VIGO SUPERIOR COURT
2020 TERM

Dustin W. Zeigler and Rose Anna L. Zeigler,
    Plaintiffs,

v.                                    CAUSE NO.   **84D06-2008-PL-004348**

First American Title Insurance Company,
    Defendant.

## **COMPLAINT FOR DECLARATORY JUDGMENT AND DETERMINATION OF DAMAGES**

Plaintiffs, for their cause of action against Defendant, state:

1.      Plaintiffs, Dustin W. Zeigler and Rose Anna L. Zeigler (collectively "Zeigler") are residents of Vigo County, Indiana.

2.      Defendant, First American Title Insurance Company (hereinafter "Company"), at all relevant times was a Nebraska corporation, doing business in Vigo County, Indiana.

3.      On March 9, 2016, Zeigler purchased their home located at 1085 W. Krislynn Woods Ave., West Terre Haute, Vigo County, Indiana (hereinafter the "Land"), more particularly described as follows:

Beginning at the Northwest corner of the Southeast Quarter of Section 17, Township 13 North, Range 9 West; thence South 89 degrees 36 minutes East a distance of 254.28 feet; thence South 82.39 feet; thence South 38 degrees 22 minutes East 143.51 feet; thence South 81 degrees 18 minutes West 40.009 feet; thence South 88 degrees 45 minutes West 303.79 feet; thence North 209.38 feet to the place of beginning.

4.      At the time Zeigler's purchase of their home, Company issued a title insurance policy, Owner's Title Policy number 5011400-1349039e, dated March 9, 2016 (hereinafter the "Policy"), insuring the fee simple title to the Land in the name of Zeigler as shown therein.  A copy of the Policy is attached hereto as Exhibit A.

5.      In February 2018, Zeigler learned that an eight-inch (8") pipeline transferring anhydrous ammonia gas and an easement for such pipeline are located dangerously close to their home on the Land.

6.      The existence of a thirty foot (30') wide easement for the gas line is evidenced of record in Vigo County, Indiana as shown by a Right of Way and Easement Grant dated April 23, 1969 and was recorded in the Vigo County, Indiana Recorder's Office on June 17, 1969, at Deed Record 348, Page 309-2 (hereinafter the "Easement").  A copy of the Easement is attached hereto as Exhibit B.

7.      The Easement was granted by a predecessor in title to Zeigler.

8.      There is also an Encroachment Agreement recorded November 25, 2003, as Instrument No. 2003035467 in the Vigo County Recorder's Office, which addresses certain rights and obligations relating to use of the Easement and contains very restrictive covenants relating to the use of Zeiglers' Land (hereinafter the "Encroachment Agreement").  A copy of the Encroachment Agreement is attached hereto as Exhibit C.

9.      The Encroachment Agreement was entered into by a predecessor in title to Zeigler.

10.     The Easement provides that the property owner "shall not, without prior written consent of Grantee [the holder of the easement rights], construct or permit to be constructed any house, structure, pipeline or other obstruction or excavation on, over or within said right of way and easement."

11.     The Zeigler's deck on the back of their home and the Zeigler's septic system are all located in and encroach upon the Easement area.

12.     The Policy makes no mention of the Easement or Encroachment Agreement.

13.     By letter dated April 11, 2018, Zeigler provided written notice to Company of a claimed loss under the terms of the Policy arising from the existence of the Easement.

14.     In processing Zeigler's claim, the Company confirmed that Easement area bisects through the middle of Zeigler's Land and is located within a few feet of Zeigler's home.

15.     No consent was given for the construction of the deck and the septic system within the Easement area, and the existence of and the location of the deck and the septic system are in violation of the terms of the Easement.

16.     The septic system is now allowed to exist only upon and subject to the terms of the Encroachment Agreement.

17.     The face amount of the insurance Policy is $216,000.00.

18.     Section 8(b) of the Policy provides in pertinent part that as follows:

"(b)     If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as Insured,

    (i)     the Amount of the Insurance shall be increased by 10%, and

    (ii)    the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid."

19.     The Policy insures against "loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1.  Title being vested other than as stated in Schedule A.
2.  Any defect in or lien or encumbrance on the Title….
3.  Unmarketable Title.
4.  …."

20.     Section 1(k) of the Policy defines "Unmarketable Title" to mean "Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease or lend if there is a contractual condition requiring the delivery of marketable title."

21.     Under Indiana law, marketable title is one that is free from reasonable doubt and will not expose the party who holds title to the hazards of litigation.

22.     The Easement and the Encroachment Agreement are encumbrances on the Title held by Zeigler for which they are entitled to damages under the Policy.

23.     The Easement and the Encroachment Agreement create Unmarketable Title for which Zeigler is entitled to damages under the Policy.

24.     Zeigler is entitled to a decree by the Court that finds that Zeigler does not have and cannot provide to prospective purchasers marketable title to their Land and therefore are entitled to recover for loss and damage arising from Unmarketable Title under the Policy.

25.     This is an action for Declaratory Judgment pursuant to Indiana Trial Rule 57 and Indiana Code 34-14-1-1 for the purpose of determining a question of actual controversy between and among the parties.

26.     This declaratory judgment is sought because Zeigler and Company, respectively, have an interest in obtaining a declaration by the Court of their rights, status, and legal obligations under the terms of the Policy.

WHEREFORE, Plaintiffs, Dustin W. Zeigler and Rose Anna L. Zeigler, request the Court for a speedy hearing in this cause and to enter a declaratory judgment as follows:

A.  Declare and decree that under the terms of the Policy, Zeigler does not have and cannot provide to prospective purchasers marketable title to their Land and therefore

are entitled to recover for loss and damage arising from Unmarketable Title under the Policy;

      B.  Declare and decree that the Easement and Encroachment Agreement create encumbrances on title such that Zeigler is entitled to recover for loss and damages to the full extent allowed under the Policy; and

      C.  Award to Zeigler costs of this action and all other appropriate relief.

COUNT II

For their second cause of action, Zeigler states:

27.     Zeigler hereby incorporates by reference Paragraph numbers 1 through 26 of Count I of this Complaint.

28.     The Company has failed to pay to Zeigler the full damages due under the terms of the Policy.

29.     Zeigler is entitled to reasonable damages as proven arising from the loss created by encumbrances on title and Unmarketable Title under the terms of the Policy issued by Defendant.

WHEREFORE, Plaintiffs, Dustin W. Zeigler and Rose Anna L. Zeigler, respectfully request judgment against the Defendant in an amount sufficient to compensate Zeigler for their loss in the full amount of the Policy value in the amount of $237,600.00, for costs of this action, and for all other relief proper in the premises.

WILKINSON, GOELLER, MODESITT,
  WILKINSON & DRUMMY
333 Ohio Street
Terre Haute, IN  47807
Telephone:  (812) 232-4311
Fax:  (812) 235-5107

Jeffrey A. Lewellyn, No. 15216-34
Attorney for Plaintiffs



| **First American Title™** | **Owner's Policy of Title Insurance** |
|---|---|
| | ISSUED BY |
| | **First American Title Insurance Company** |
| **Owner's Policy** | POLICY NUMBER |
| | **5011400-1349039e** |

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at the address shown in Section 18 of the Conditions.

### COVERED RISKS

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B, AND THE CONDITIONS, **FIRST AMERICAN TITLE INSURANCE COMPANY**, a Nebraska corporation (the "Company") insures, as of Date of Policy and, to the extent stated in Covered Risks 9 and 10, after Date of Policy, against loss or damage, not exceeding the Amount of Insurance, sustained or incurred by the Insured by reason of:

1. Title being vested other than as stated in Schedule A.
2. Any defect in or lien or encumbrance on the Title. This Covered Risk includes but is not limited to insurance against loss from
   (a) A defect in the Title caused by
      (i) forgery, fraud, undue influence, duress, incompetency, incapacity, or impersonation;
      (ii) failure of any person or Entity to have authorized a transfer or conveyance;
      (iii) a document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered;
      (iv) failure to perform those acts necessary to create a document by electronic means authorized by law;
      (v) a document executed under a falsified, expired, or otherwise invalid power of attorney;
      (vi) a document not properly filed, recorded, or indexed in the Public Records including failure to perform those acts by electronic means authorized by law; or
      (vii) a defective judicial or administrative proceeding.
   (b) The lien of real estate taxes or assessments imposed on the Title by a governmental authority due or payable, but unpaid.
   (c) Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
3. Unmarketable Title.
4. No right of access to and from the Land.

**(Covered Risks Continued on Page 2)**

In Witness Whereof, First American Title Insurance Company has caused its corporate name to be hereunto affixed by its authorized officers as of Date of Policy shown in Schedule A.

**First American Title Insurance Company**

Dennis J. Gilmore
President

Jeffrey S. Robinson
Secretary

For Reference:

**File #:** 160070
**Loan #:** 011509483

Issued By:

**Aames Title & Closings, LLC**
927 W. National Ave
Brazil, IN 47834

(This Policy is valid only when Schedules A and B are attached)

This Jacket was created electronically and constitutes an original document

Copyright 2006-2009 American Land Title Association. All rights reserved. The use of this form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

**EXHIBIT A**

Policy #:  5011400-1349039e                                                                                    COVERED RISKS (Continued)

5.  The violation or enforcement of any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (a)  the occupancy, use, or enjoyment of the Land;
    (b)  the character, dimensions, or location of any improvement erected on the Land;
    (c)  the subdivision of land; or
    (d)  environmental protection
    if a notice, describing any part of the Land, is recorded in the Public Records setting forth the violation or intention to enforce, but only to the extent of the violation or enforcement referred to in that notice.
6.  An enforcement action based on the exercise of a governmental police power not covered by Covered Risk 5 if a notice of the enforcement action, describing any part of the Land, is recorded in the Public Records, but only to the extent of the enforcement referred to in that notice.
7.  The exercise of the rights of eminent domain if a notice of the exercise, describing any part of the Land, is recorded in the Public Records.
8.  Any taking by a governmental body that has occurred and is binding on the rights of a purchaser for value without Knowledge.
9.  Title being vested other than as stated in Schedule A or being defective
    (a)  as a result of the avoidance in whole or in part, or from a court order providing an alternative remedy, of a transfer of all or any part of the title to or any interest in the Land occurring prior to the transaction vesting Title as shown in Schedule A because that prior transfer constituted a fraudulent or preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws; or
    (b)  because the instrument of transfer vesting Title as shown in Schedule A constitutes a preferential transfer under federal bankruptcy, state insolvency, or similar creditors' rights laws by reason of the failure of its recording in the Public Records
        (i)  to be timely, or
        (ii)  to impart notice of its existence to a purchaser for value or to a judgment or lien creditor.
10.  Any defect in or lien or encumbrance on the Title or other matter included in Covered Risks 1 through 9 that has been created or attached or has been filed or recorded in the Public Records subsequent to Date of Policy and prior to the recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The Company will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions.

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
        (i)  the occupancy, use, or enjoyment of the Land;
        (ii)  the character, dimensions, or location of any improvement erected on the Land;
        (iii)  the subdivision of land; or
        (iv)  environmental protection;
        or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;

    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a)  a fraudulent conveyance or fraudulent transfer; or
    (b)  a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

Policy #: 5011400-1349039e                                            CONDITIONS

## 1. DEFINITION OF TERMS
The following terms when used in this policy mean:
(a) "Amount of Insurance": The amount stated in Schedule A, as may be increased or decreased by endorsement to this policy, increased by Section 8(b), or decreased by Sections 10 and 11 of these Conditions.
(b) "Date of Policy": The date designated as "Date of Policy" in Schedule A.
(c) "Entity": A corporation, partnership, trust, limited liability company, or other similar legal entity.
(d) "Insured": The Insured named in Schedule A.
　(i) The term "Insured" also includes
　　(A) successors to the Title of the Insured by operation of law as distinguished from purchase, including heirs, devisees, survivors, personal representatives, or next of kin;
　　(B) successors to an Insured by dissolution, merger, consolidation, distribution, or reorganization;
　　(C) successors to an Insured by its conversion to another kind of Entity;
　　(D) a grantee of an Insured under a deed delivered without payment of actual valuable consideration conveying the Title
　　　(1) if the stock, shares, memberships, or other equity interests of the grantee are wholly-owned by the named Insured,
　　　(2) if the grantee wholly owns the named Insured,
　　　(3) if the grantee is wholly-owned by an affiliated Entity of the named Insured, provided the affiliated Entity and the named Insured are both wholly-owned by the same person or Entity, or
　　　(4) if the grantee is a trustee or beneficiary of a trust created by a written instrument established by the Insured named in Schedule A for estate planning purposes.
　(ii) With regard to (A), (B), (C), and (D) reserving, however, all rights and defenses as to any successor that the Company would have had against any predecessor Insured.
(e) "Insured Claimant": An Insured claiming loss or damage.
(f) "Knowledge" or "Known": Actual knowledge, not constructive knowledge or notice that may be imputed to an Insured by reason of the Public Records or any other records that impart constructive notice of matters affecting the Title.
(g) "Land": The land described in Schedule A, and affixed improvements that by law constitute real property. The term "Land" does not include any property beyond the lines of the area described in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, alleys, lanes, ways, or waterways, but this does not modify or limit the extent that a right of access to and from the Land is insured by this policy.
(h) "Mortgage": Mortgage, deed of trust, trust deed, or other security instrument, including one evidenced by electronic means authorized by law.
(i) "Public Records": Records established under state statutes at Date of Policy for the purpose of imparting constructive notice of matters relating to real property to purchasers for value and without Knowledge. With respect to Covered Risk 5(d), "Public Records" shall also include environmental protection liens filed in the records of the clerk of the United States District Court for the district where the Land is located.
(j) "Title": The estate or interest described in Schedule A.
(k) "Unmarketable Title": Title affected by an alleged or apparent matter that would permit a prospective purchaser or lessee of the Title or lender on the Title to be released from the obligation to purchase, lease, or lend if there is a contractual condition requiring the delivery of marketable title.

## 2. CONTINUATION OF INSURANCE
The coverage of this policy shall continue in force as of Date of Policy in favor of an Insured, but only so long as the Insured retains an estate or interest in the Land, or holds an obligation secured by a purchase money Mortgage given by a purchaser from the Insured, or only so long as the Insured shall have liability by reason of warranties in any transfer or conveyance of the Title. This policy shall not continue in force in favor of any purchaser from the Insured of either (i) an estate or interest in the Land, or (ii) an obligation secured by a purchase money Mortgage given to the Insured.

## 3. NOTICE OF CLAIM TO BE GIVEN BY INSURED CLAIMANT
The Insured shall notify the Company promptly in writing (i) in case of any litigation as set forth in Section 5(a) of these Conditions, (ii) in case Knowledge shall come to an Insured hereunder of any claim of title or interest that is adverse to the Title, as insured, and that might cause loss or damage for which the Company may be liable by virtue of this policy, or (iii) if the Title, as insured, is rejected as Unmarketable Title. If the Company is prejudiced by the failure of the Insured Claimant to provide prompt notice, the Company's liability to the Insured Claimant under the policy shall be reduced to the extent of the prejudice.

## 4. PROOF OF LOSS
In the event the Company is unable to determine the amount of loss or damage, the Company may, at its option, require as a condition of payment that the Insured Claimant furnish a signed proof of loss. The proof of loss must describe the defect, lien, encumbrance, or other matter insured against by this policy that constitutes the basis of loss or damage and shall state, to the extent possible, the basis of calculating the amount of the loss or damage.

## 5. DEFENSE AND PROSECUTION OF ACTIONS
(a) Upon written request by the Insured, and subject to the options contained in Section 7 of these Conditions, the Company, at its own cost and without unreasonable delay, shall provide for the defense of an Insured in litigation in which any third party asserts a claim covered by this policy adverse to the Insured. This obligation is limited to only those stated causes of action alleging matters insured against by this policy. The Company shall have the right to select counsel of its choice (subject to the right of the Insured to object for reasonable cause) to represent the Insured as to those stated causes of action. It shall not be liable for and will not pay the fees of any other counsel. The Company will not pay any fees, costs, or expenses incurred by the Insured in the defense of those causes of action that allege matters not insured against by this policy.
(b) The Company shall have the right, in addition to the options contained in Section 7 of these Conditions, at its own cost, to institute and prosecute any action or proceeding or to do any other act that in its opinion may be necessary or desirable to establish the Title, as insured, or to prevent or reduce loss or damage to the Insured. The Company may take any

Policy #: 5011400-1349039e

appropriate action under the terms of this policy, whether or not it shall be liable to the Insured. The exercise of these rights shall not be an admission of liability or waiver of any provision of this policy. If the Company exercises its rights under this subsection, it must do so diligently.

(c) Whenever the Company brings an action or asserts a defense as required or permitted by this policy, the Company may pursue the litigation to a final determination by a court of competent jurisdiction, and it expressly reserves the right, in its sole discretion, to appeal any adverse judgment or order.

6. **DUTY OF INSURED CLAIMANT TO COOPERATE**

(a) In all cases where this policy permits or requires the Company to prosecute or provide for the defense of any action or proceeding and any appeals, the Insured shall secure to the Company the right to so prosecute or provide defense in the action or proceeding, including the right to use, at its option, the name of the Insured for this purpose. Whenever requested by the Company, the Insured, at the Company's expense, shall give the Company all reasonable aid (i) in securing evidence, obtaining witnesses, prosecuting or defending the action or proceeding, or effecting settlement, and (ii) in any other lawful act that in the opinion of the Company may be necessary or desirable to establish the Title or any other matter as insured. If the Company is prejudiced by the failure of the Insured to furnish the required cooperation, the Company's obligations to the Insured under the policy shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation, with regard to the matter or matters requiring such cooperation.

(b) The Company may reasonably require the Insured Claimant to submit to examination under oath by any authorized representative of the Company and to produce for examination, inspection, and copying, at such reasonable times and places as may be designated by the authorized representative of the Company, all records, in whatever medium maintained, including books, ledgers, checks, memoranda, correspondence, reports, e-mails, disks, tapes, and videos whether bearing a date before or after Date of Policy, that reasonably pertain to the loss or damage. Further, if requested by any authorized representative of the Company, the Insured Claimant shall grant its permission, in writing, for any authorized representative of the Company to examine, inspect, and copy all of these records in the custody or control of a third party that reasonably pertain to the loss or damage. All information designated as confidential by the Insured Claimant provided to the Company pursuant to this Section shall not be disclosed to others unless, in the reasonable judgment of the Company, it is necessary in the administration of the claim. Failure of the Insured Claimant to submit for examination under oath, produce any reasonably requested information, or grant permission to secure reasonably necessary information from third parties as required in this subsection, unless prohibited by law or governmental regulation, shall terminate any liability of the Company under this policy as to that claim.

7. **OPTIONS TO PAY OR OTHERWISE SETTLE CLAIMS; TERMINATION OF LIABILITY**

In case of a claim under this policy, the Company shall have the following additional options:

(a) To Pay or Tender Payment of the Amount of Insurance.
To pay or tender payment of the Amount of Insurance under this policy together with any costs, attorneys' fees, and

expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment or tender of payment and that the Company is obligated to pay.
Upon the exercise by the Company of this option, all liability and obligations of the Company to the Insured under this policy, other than to make the payment required in this subsection, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

(b) To Pay or Otherwise Settle With Parties Other Than the Insured or With the Insured Claimant.

(i) To pay or otherwise settle with other parties for or in the name of an Insured Claimant any claim insured against under this policy. In addition, the Company will pay any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay; or

(ii) To pay or otherwise settle with the Insured Claimant the loss or damage provided for under this policy, together with any costs, attorneys' fees, and expenses incurred by the Insured Claimant that were authorized by the Company up to the time of payment and that the Company is obligated to pay.

Upon the exercise by the Company of either of the options provided for in subsections (b)(i) or (ii), the Company's obligations to the Insured under this policy for the claimed loss or damage, other than the payments required to be made, shall terminate, including any liability or obligation to defend, prosecute, or continue any litigation.

8. **DETERMINATION AND EXTENT OF LIABILITY**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the Insured Claimant who has suffered loss or damage by reason of matters insured against by this policy.

(a) The extent of liability of the Company for loss or damage under this policy shall not exceed the lesser of

(i) the Amount of Insurance; or

(ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy.

(b) If the Company pursues its rights under Section 5 of these Conditions and is unsuccessful in establishing the Title, as insured,

(i) the Amount of Insurance shall be increased by 10%, and

(ii) the Insured Claimant shall have the right to have the loss or damage determined either as of the date the claim was made by the Insured Claimant or as of the date it is settled and paid.

(c) In addition to the extent of liability under (a) and (b), the Company will also pay those costs, attorneys' fees, and expenses incurred in accordance with Sections 5 and 7 of these Conditions.

9. **LIMITATION OF LIABILITY**

(a) If the Company establishes the Title, or removes the alleged defect, lien, or encumbrance, or cures the lack of a right of access to or from the Land, or cures the claim of Unmarketable Title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused to the Insured.

(b) In the event of any litigation, including litigation by the

Policy #: 5011400-1349039e

Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals, adverse to the Title, as insured.

(c) The Company shall not be liable for loss or damage to the Insured for liability voluntarily assumed by the Insured in settling any claim or suit without the prior written consent of the Company.

**10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY**

All payments under this policy, except payments made for costs, attorneys' fees, and expenses, shall reduce the Amount of Insurance by the amount of the payment.

**11. LIABILITY NONCUMULATIVE**

The Amount of Insurance shall be reduced by any amount the Company pays under any policy insuring a Mortgage to which exception is taken in Schedule B or to which the Insured has agreed, assumed, or taken subject, or which is executed by an Insured after Date of Policy and which is a charge or lien on the Title, and the amount so paid shall be deemed a payment to the Insured under this policy.

**12. PAYMENT OF LOSS**

When liability and the extent of loss or damage have been definitely fixed in accordance with these Conditions, the payment shall be made within 30 days.

**13. RIGHTS OF RECOVERY UPON PAYMENT OR SETTLEMENT**

(a) Whenever the Company shall have settled and paid a claim under this policy, it shall be subrogated and entitled to the rights of the Insured Claimant in the Title and all other rights and remedies in respect to the claim that the Insured Claimant has against any person or property, to the extent of the amount of any loss, costs, attorneys' fees, and expenses paid by the Company. If requested by the Company, the Insured Claimant shall execute documents to evidence the transfer to the Company of these rights and remedies. The Insured Claimant shall permit the Company to sue, compromise, or settle in the name of the Insured Claimant and to use the name of the Insured Claimant in any transaction or litigation involving these rights and remedies.

If a payment on account of a claim does not fully cover the loss of the Insured Claimant, the Company shall defer the exercise of its right to recover until after the Insured Claimant shall have recovered its loss.

(b) The Company's right of subrogation includes the rights of the Insured to indemnities, guaranties, other policies of insurance, or bonds, notwithstanding any terms or conditions contained in those instruments that address subrogation rights.

**14. ARBITRATION**

Either the Company or the Insured may demand that the claim or controversy shall be submitted to arbitration pursuant to the Title Insurance Arbitration Rules of the American Land Title Association ("Rules"). Except as provided in the Rules, there shall be no joinder or consolidation with claims or controversies of other persons. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the Insured arising out of or relating to this policy, any service in connection with its issuance or the breach of a policy provision, or to any other controversy or claim arising out of the transaction giving rise to this policy. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the

Company or the Insured. All arbitrable matters when the Amount of Insurance is in excess of $2,000,000 shall be arbitrated only when agreed to by both the Company and the Insured. Arbitration pursuant to this policy and under the Rules shall be binding upon the parties. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court of competent jurisdiction.

**15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT**

(a) This policy together with all endorsements, if any, attached to it by the Company is the entire policy and contract between the Insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage that arises out of the status of the Title or by any action asserting such claim shall be restricted to this policy.

(c) Any amendment of or endorsement to this policy must be in writing and authenticated by an authorized person, or expressly incorporated by Schedule A of this policy.

(d) Each endorsement to this policy issued at any time is made a part of this policy and is subject to all of its terms and provisions. Except as the endorsement expressly states, it does not (i) modify any of the terms and provisions of the policy, (ii) modify any prior endorsement, (iii) extend the Date of Policy, or (iv) increase the Amount of Insurance.

**16. SEVERABILITY**

In the event any provision of this policy, in whole or in part, is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision or such part held to be invalid, but all other provisions shall remain in full force and effect.

**17. CHOICE OF LAW; FORUM**

(a) Choice of Law: The Insured acknowledges the Company has underwritten the risks covered by this policy and determined the premium charged therefor in reliance upon the law affecting interests in real property and applicable to the interpretation, rights, remedies, or enforcement of policies of title insurance of the jurisdiction where the Land is located.

Therefore, the court or an arbitrator shall apply the law of the jurisdiction where the Land is located to determine the validity of claims against the Title that are adverse to the Insured and to interpret and enforce the terms of this policy. In neither case shall the court or arbitrator apply its conflicts of law principles to determine the applicable law.

(b) Choice of Forum: Any litigation or other proceeding brought by the Insured against the Company must be filed only in a state or federal court within the United States of America or its territories having appropriate jurisdiction.

**18. NOTICES, WHERE SENT**

Any notice of claim and any other notice or statement in writing required to be given to the Company under this policy must be given to the Company at **First American Title Insurance Company, Attn: Claims National Intake Center, 1 First American Way, Santa Ana, California 92707. Phone: 888-632-1642.**

ALTA OWNER'S POLICY (6/17/06)

# SCHEDULE A

**Name and Address of**
**Title Insurance Company:**

First American Title Insurance Company
1 First American Way, Santa Ana, CA 92707

**File No.:** 160070

**Policy No.:** 5011400-1349039e

**Address Reference:** 1085 W Krislynn Woods Ave., West Terre Haute, IN 47885-8508

**Amount of Insurance:** $216,500.00

**Premium:** $545.00

**Date of Policy:** March 09, 2016 at

1. **Name of Insured:**

   Dustin W Zeigler and Rose Anna L Zeigler

2. **The estate or interest in the Land that is insured by this policy is:**

   Fee Simple

3. **Title is vested in:**

   Dustin W Zeigler and Rose Anna L Zeigler

4. **The Land referred to in this policy is described as follows:**

   Beginning at the Northwest corner of the Southeast Quarter of Section 17, Township 13 North, Range 9 West; thence South 89 degrees 36 minutes East a distance of 254.28 feet; thence South 82.39 feet; thence South 38 degrees 22 minutes East 143.51 feet; thence South 81 degrees 18 minutes West 40.009 feet; thence South 88 degrees 45 minutes West 303.79 feet; thence North 209.38 feet to the place of beginning.

**First American Title Insurance Company**



Copyright 2006-2009 American Land Title Association.  All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited.   Reprinted under license from the American Land Title Association.
File No. 160070
ALTA Owner's Policy Sch A

ALTA OWNER'S POLICY (6/17/06)

## SCHEDULE B

**File No.: 160070**                                                      **Policy No.: 5011400-1349039e**

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees, or expenses that arise by reason of:

1. Taxes for the year 2014 payable 2015 are now assessed in the name of: Kevin J. & Diana K. Maher.
   Legal Description: NW cor SE 17-13-9  1.3A
   Parcel # 84-02-17-401-013.000-025              Taxing District:  Fayette
   Assessed Valuation:      Land $35,000
                            Improvements $137,200
                            Exemptions $45,000       Standard
                                       $3,000        Mortgage
                                       $44,485       Supplemental Standard
   Spring Installment: $766.74  Paid                Fall Installment: $766.74  Paid

   Taxes for the year 2015 payable in the year 2016 are now a lien but which are not currently due and payable.
   Taxes for the year 2016 payable in the year 2017 are now a lien but which are not currently due and payable.

   **The permanent index numbers are provided for information only.  The company neither guarantees nor insures the accuracy or completeness thereof.  You are advised that you should not rely on these numbers and should independently verify the accuracy thereof.**

2. Minerals or mineral rights or any other subsurface substances (including, without limitation, oil, gas and coal), and all rights incident thereto, now or previously leased, granted, excepted or reserved.

3. Rights of the public, county, state and/or municipality in and to that portion of the property located in a public road or right of way.

   Right of way for drainage tiles, ditches, feeders and laterals, if any.

   First American Title Insurance Company neither guaranties nor insures the amount of acreage as stated in the legal description.

4. Mortgage from Dustin W Zeigler Rose Anna L Zeigler to First Bank & Trust, IL, in the principal amount of $205,675.00, recorded subsequently to the date of policy.

**First American Title Insurance Company**



Copyright 2006-2009 American Land Title Association.  All rights reserved.
The use of this Form is restricted to ALTA licensees and ALTA members in good standing as of the date of use.
All other uses are prohibited.   Reprinted under license from the American Land Title Association.

74-142-4580

E-534A

Vigor Superior Court 6
IN-VIG-003200
Ammonia Region

W. O. # 66101
R. O. W. T-23

## RIGHT OF WAY AND EASEMENT GRANT

STATE OF INDIANA
COUNTY OF Vigo

KNOW ALL MEN BY THESE PRESENTS:

That the undersigned Wesley S Farmer and Doris Ann Farmer (husband and wife)
RR 3 West Terre Haute, Indiana

hereinafter referred to as "Grantor", whether one or more, for and in consideration of the sum of One——

——— in hand paid, and other good and valuable considerations, the receipt and adequacy of which are hereby acknowledged, does hereby grant, bargain, sell and convey unto GULF CENTRAL PIPELINE COMPANY, a Delaware corporation, its successors and assigns, hereinafter referred to as "Grantee", a right of way and perpetual easement to at any time and from time to time lay, construct, maintain, alter, inspect, operate, repair, relocate, change the size of, remove and replace one ———— pipeline together with all appurtenances, equipment and facilities useful or incident to the operation or protection thereof, for the transportation of oil, gas, anhydrous ammonia, other petroleum products or derivatives or any other liquids, gases or substances which can be transported through pipelines, along a route to be selected by Grantee on, under, ——— the following described lands owned by Grantor situated in the County of Vigo, State of Indiana, to wit:

One hundred fifty (150) feet of even width off the North side of the Southeast quarter of Sec. 17 T13N, R9W. Except 15 feet off the West side thereof for a public highway. Also except the coal and minerals under said real estate as conveyed to Indiana Fuel Co. by deed dated Sept. 30, 1902 and recorded in Deed Record 107 page 413. Subject to pole line easement as granted to Wabash Valley Electric Co. by instrument dated Sept. 26, 1923 and recorded in Deed Record 174 page 183. Also subject to pole line easement as granted to Public Service Co. of Indiana, Inc., by instrument dated July 6, 1954 and recorded in Deed Record 284 page 324. Also: Grantor shall be notified prior to construction operations including brush cutting. Grantee agrees to leave one white oak tree approx 700 feet from west property line adjacent to the North line. Also: See exhibit "A" for proposed pipeline route.

This grant of right of way and easement shall and does include the right of ingress and egress on, over, across and through the above described lands and adjoining lands of Grantor for all purposes necessary or incident to the exercise of the rights granted hereunder.

The right of way herein granted shall have a permanent width of thirty (30) feet; provided Grantee may temporarily use additional work space as needed during and for the construction, maintenance, repair, replacement, ——— and removal of any pipeline or appurtenant facilities. Grantee may, within one year after the installation of the ——— pipeline, file in the records of the county in which said land is located a plat or other document designating the location of the said right of way and easement herein granted; however, should Grantee not make such filing the center line of said right of way and easement shall be the center line of the pipeline constructed hereunder.

Grantor reserves the right to use and enjoy said lands except as may be necessary for the purposes herein granted to Grantee provided Grantor shall not, without prior written consent of Grantee, construct or permit to be constructed any house, structure, ——— pipeline or other obstruction or excavation on, over or within said right of way and easement.

Grantee shall at the time of construction bury said pipelines to a depth of at least 30 inches through cultivated lands ———

Grantee agrees to pay for all damage to growing crops, fences, buildings and timber on said land which may be caused by the exercise of the rights granted hereunder provided that after the first pipeline has been laid Grantee shall not be liable for damages caused on the right of way by keeping said right of way clear of trees, undergrowth, brush and obstructions.

Should Grantee at any time construct more than one pipeline hereunder it will pay to Grantor the sum of One Dollar ($1.00) per lineal rod of additional pipeline laid along the right of way and easement granted hereunder within sixty days after the completion of such pipeline.

Any payment provided for hereunder may be made by check or draft either direct or by mail to Grantor or may be mailed or delivered for deposit to Grantor's credit in the ——— Bank of ———, which bank or its successors shall be the depository for such payment as a representative of Grantor and Grantor's successors and assigns and the death or incapacity of Grantor shall not terminate or affect Grantee's right to deposit such payment or said depository bank or its successor. If mailed, such payment shall be considered made as of the date of mailing thereof to Grantor or to said bank. No change in the ownership of the land affected by this grant shall affect the payments which may be made hereunder until thirty (30) days after Grantee shall have received a certified copy of the recorded instrument evidencing such transfer. The furnishing of such evidence shall not affect the validity of payments theretofore made.

If two or more persons are entitled to receive any payment hereunder, Grantee may make or tender said payment jointly to such persons or, at Grantee's election, the proportionate part of said payment to which each person is entitled may be made or tendered to him separately.

The terms and provisions hereof shall be binding upon and shall inure to the benefit of the successors and assigns of Grantor and Grantee and Grantee is expressly granted the right to assign this right of way and easement or any part thereof or interest therein and the same shall be divisible among two or more owners as to any right or interest created hereunder.

This agreement may be executed in one or more counterparts and shall be binding upon each party executing the original or any counterpart thereof regardless of whether all parties named as Grantor joined in the execution hereof.

The acceptance by Grantee of this agreement and its consent thereto, are evidenced by its payment to Grantor of the consideration first recited above.

This agreement as written covers the entire agreement between the parties and no other representations or agreements, written or oral, have been made modifying, adding to or changing the terms hereof and the person obtaining this agreement on behalf of Grantee has no authority to make any agreement or representation not expressed herein.

TO HAVE AND TO HOLD said right of way and easement unto Grantee, its successors and assigns, forever or until released by a recordable instrument.

IN WITNESS WHEREOF, Grantor has signed this agreement on this 23rd day of April, ———

Witnesses:

C. F. Crary

Wesley S. Farmer

Doris Ann Farmer

EXHIBIT B

310

State of Indiana
County of *Vigo*          } ss:                    ACKNOWLEDGME

Before me, *May B. Smith*_____, a notary public in and for said state, this **23** day of
*April*___ 19**69** appeared *Mr. Wesley S. Farmer and Doris Ann*
*Farmer (Husband & Wife)*
Wesley S. Farmer and Doris Ann Farmer, husband and wife.
(names of grantors) and acknowledged the execution of the foregoing instrument.

WITNESS my hand and official seal.

_____                    **MAYB.SMITH.**
                                                 May B. Smith
                                                 (TYPE OR PRINT NAME
                                                 OF NOTARY PUBLIC)

My commission expires                                 Notary Public

My Commission Expires October 18, 1970    JERRY P. BELKNAP
This instrument was prepared by _____

---

State of Indiana
County of _____ } ss:                    ACKNOWLEDGMENT

Before me, _____, a notary public in and for said state, this _____ day of
_____, 19 ___ appeared _____
_____
_____

(names of grantors) and acknowledged the execution of the foregoing instrument.

WITNESS my hand and official seal.

                        Trilla to Clinton
                        IN-VIG-003200
                        Ammonia Region          _____
                                                 (TYPE OR PRINT NAME
                                                 OF NOTARY PUBLIC)

My commission expires                                 Notary Public

This instrument was prepared by _____

---

LINE LIST NO.

RIGHT OF WAY

Dated

FROM

TO

GULF CENTRAL PIPELINE COMPANY
P. O. Box 1916
Houston, Texas 77001

State of Indiana

County of

---

State of Indiana
County of _____ } ss:                    CORPORATE ACKNOWLEDGMENT

Before me, _____, a notary public in and for said state, this _____ day of ___
_____, 19 ___ appeared _____ Corporation
by _____ and _____,
its President and Secretary, respectively, and acknowledged the execution of the foregoing instrument and the affixing thereto of the
corporate seal of said Corporation.

WITNESS my hand and official seal.

_____
                                                 _____
                                                 (TYPE OR PRINT NAME
                                                 OF NOTARY PUBLIC)

My commission expires                                 Notary Public

_____
This instrument was prepared by _____



SE ¼ SECTION 17 T13N R9W
VIGO COUNTY, INDIANA

WESLEY S.Jr.& DORIS ANN FARMER

N

Trilla to Clinton
IN-VIG-003200
Ammonia Region

Total Feet = 2722'
Total Rods = 165

Exhibit "A" of Right of Way and
easement grant dated 4-23-1969
Wesley S Farmer property

| GULF CENTRAL PIPELINE | |
|---|---|
| GULF INTERSTATE ENGINEERING CO. | |
| PROPOSED PIPELINE CROSSING WESLEY S. Jr.& DORIS ANN FARMER PROPERTY VIGO CO. INDIANA | |
| DATE 4-7-69 | SCALE 1"= 500' |
| DRAWN BY ELW. | APPROVED |
| CHECKED BY | BOOK NO. B639 |
| APPROVED | DRWG. NO. |

RECEIVED FOR RECORD THE 17 DAY OF June 1969 AT 1 O'CLOCK P.m. WILLIAM R. COX, RECORDER



Trilla to Clinton
IN-VIG-003200
Ammonia Region



SECTION 17, T13N-R9W, VIGO COUNTY, INDIANA

Trilla to Clinton
IN-VIG-003200
Ammonia Region

"AS BUILT"

GULF CENTRAL PIPELINE

GULF INTERSTATE ENGINEERING CO.

PERMANENT EASEMENT CROSSING
WESLEY S. FARMER, et ux, PROPERTY
VIGO COUNTY, INDIANA

| DATE April 17, 1970 | SCALE 1"=1000' |
| DRAWN BY J.E.Esparza | APPROVED |
| CHECKED BY C.S. Perez | BOOK NO. A-601, Pg. 19 |
| APPROVED | GCA-A25-48-30A-P |

Total Feet - 2720'
Total Rods - 165
1.67 Acres Permanent Easement

Trilla to Clinton
IN-VIG-003200
Ammonia Region



RAYMOND WATTS
VIGO County Recorder IN
IN 2003035467 AG
11/25/2003 08:56:40 5 PGS
Filing Fee:  $17.00

## Encroachment Agreement

THIS AGREEMENT made and entered into between Kaneb Pipe Line Operating Partnership L.P. (hereinafter referred to as "Kaneb") AND George A. Schoffstall, Jr. and Kellie Schoffstall, husband and wife. (hereinafter referred to as "Owner").

Whereas, the Owner has caused a septic system and appurtenances to be built on the following described property:

### Legal Description of Property:

Beginning at the northwestern corner of the Southeast Quarter of Section 17, Township 13 North, Range 9 West, thence South 89 degrees 36 minutes East, a distance of 254.28 feet; thence South 82.39 feet; thence South 38 degrees 22 minutes East 143.51 feet; thence South 81 degrees 18 minutes West 40.09 feet; thence South 88 degrees 45 minutes West 303.79 feet; thence North 209.38 feet to the place of beginning.

Subject to an easement 25 feet wide off the South side hereby reserved for roadway.
Also subject to easement to Public Service Company of Indiana, Inc. for electric transmission lines, dated June 30, 1954, and recorded in Deed Record 284, Page 324.
Also subject to easement granted to the Ohio Oil Company dated August 29, 1949 and recorded in Deed Record 258, Page 363;
Also subject to easement granted to Gulf Central Pipe Line Company dated April 23, 1969, and recorded in Deed Record 348, Page 309;
Excepting the coal and material in the coal and the rights pertaining thereto, as conveyed to the Indiana Fuel Company by deed dated September 30, 1902, and recorded in Deed Record 107, Page 413;
All being records of the Recorder's Office of Vigo County, Indiana.

A/K/A 1085 W. Krislynn Woods Ave., West Terre Haute, IN 47885

Owner acknowledges parts of said septic system and appurtenances, as built, encroaches on Kaneb's easement as defined in the Right of Way Grant recorded on the 17th day of June, 1969 in Book 348, Page 309-2 in the office of the recorder in Vigo County, Indiana.

Whereas, Kaneb is willing to grant permission for the existing encroachment of said septic system and appurtenances, subject to the following conditions:



EXHIBIT
C



1.  The permission herein granted is subject to the existing easement rights of Kaneb.
2.  Owner will construct, maintain, relocate, and remove the septic system and appurtenances at no expense to Kaneb. If the septic system and appurtenances, or portion thereof, needs to be removed for Kaneb to access its pipeline facilities, Kaneb will contact Owner of the septic system and appurtenances to arrange for removal. However, in the event of an emergency or similar circumstances, it may be necessary for Kaneb to remove the septic system and appurtenances, or portion thereof. Kaneb will not be responsible for any costs or damages associated with said removal.
3.  Owner must notify Kaneb at least 48 hours before any future work or modification commences on or near Kaneb's easement. No work shall take place without Kaneb staff being present at the site at the time of construction.
4.  Owner shall supply plans, surveys and drawings, if Kaneb deems necessary.
5.  This Agreement shall be revocable by Kaneb in the event of Owner's noncompliance with any requirements, conditions, or specifications of the Agreement, upon notice given to Owner of the septic system and appurtenances.
6.  Kaneb reserves the right to cease permitted operations, if in the opinion of Kaneb, the conditions of the permit are not being met, or if Permittee is not following safe operating, excavation activity, appropriate safety, traffic control, etc.
7.  Owner agrees to indemnify, save and hold harmless Kaneb, its shareholders, and their directors and employees, against any and all claims for damages, injury or death arising by reason of Owner's Permitted Work or Owner's placement, use, and maintenance of said septic system and appurtenances.
8.  The septic system and appurtenances shall be constructed and maintained to comply with all laws and industry standards.
9.  The permission herein granted by Kaneb is limited to its interest and authority in the subject land and Owner acknowledges the possible obligation to obtain the required permission from other parties of interest or the Government. Kaneb permits this septic system and appurtenances only to the extent it may do so by law.
10. The terms, conditions, and provisions contained herein shall be binding upon the parties hereto, their heirs, successors and assigns.
11. Any future encroachment on Kaneb right of way will require an additional agreement and is not guaranteed to receive permission.
12. This agreement is specific to the property described above and is in no way to be construed as reducing the width of the right of way as defined in the Right of Way Grant recorded on the 17th day of June, 1969 in Book 348, Page 309-2 in the office of the recorder in Vigo County, Indiana.

Trilla to Clinton
IN-VIG-003200
Ammonia Region

EXECUTED this _1st_ Day of _Nov_ , 20 _03_ .

BY: _George A. Schoffstall JR_
George A. Schoffstall, Jr.

BY: _Kellie Schoffstall_
Kellie Schoffstall

KANEB PIPE LINE OPERATING PARTNERSHIP, L.P., BY
KANEB PIPE LINE COMPANY LLC THE SOLE GENERAL
PARTNER OF KANEB PIPE LINE OPERATING
PARTNERSHIP, L.P.

BY: _____

NAME: _____Lee E. Childres_____

TITLE: _____Vice President of Engineering_____

Trilla to Clinton
IN-VIG-003200
Ammonia Region

ACKNOWLEDGMENT

STATE OF _____ *I N d i A N A* _____ )
COUNTY OF _____ *V i g o* _____ )                    ss:   _____

Before me _____ *N O U - o 3 - o 3* _____ , a Notary Public in and for said County and State,
on the _____ day of _____ , 20 _____ , personally appeared _____ *GeoRGe*
*Sc Ho PfSTALL   JL* _____
to me known to be the identical person _____ who executed the within and foregoing instrument, and
acknowledged to me that  he executed the same as _____ free and voluntary act and deed for the uses
and purposed therein set forth.

    IN WITNESS WHEREOF,   I have hereunto set my hand and official seal the day and year last
above written.

My commission expires *8-17- 09* _____

                                        *Betty Schoppstall*
                                        Notary Public

        Trilla to Clinton
        IN-VIG-003200
        Ammonia Region

ACKNOWLEDGMENT

STATE OF _____ *I N d i A N A* _____ )
COUNTY OF _____ *V i g o* _____ )                    ss:   _____

Before me _____ *N o U  0 3 - o 3* _____ , a Notary Public in and for said County and State,
on the _____ day of _____ , 20 _____ , personally appeared _____ *KeLLie*
*Sc Ho FfSTHLL* _____
to me known to be the identical person _____ who executed the within and foregoing instrument, and
acknowledged to me that he executed the same as _____ free and voluntary act and deed for the uses
and purposed therein set forth.

    IN WITNESS WHEREOF,   I have hereunto set my hand and official seal the day and year last
above written.

My commission expires *8-17 09* _____

                                        *Betty Schoppstall*
                                        Notary Public

LL-30A                          Page 4 of 5



*5*

ACKNOWLEDGMENT

STATE OF __KANSAS__          )
                            )     ss: _____
COUNTY OF __SEDGWICK__       )

      BE IT REMEMBERED,   that on this _7th_ day of _November_, 20 _03_, before me,   duly commissioned, in and for the County and State aforesaid, came   Lee E. Childres, Vice President of Engineering of Kaneb Pipe Line Company LLC, The Sole General Partner of Kaneb Pipe Line Operating Pipe Partnership, L.P.,   a Delaware Limited Partnership, personally known to me to be such person, and to be the same person who executed the foregoing instrument of writing in behalf of said corporation, and he duly acknowledged the execution of the same for himself and or said corporation for the uses and purposes therein set forth.

      IN WITNESS WHEREOF,   I have hereunto set my hand and affixed my official Seal on the day and year last above written.

_Leanne M. Lechner_
Notary Public

OFFICIAL SEAL
LEANNE M. LECHNER
MY COMMISSION EXPIRES
November 14, 2006

My commission expires

Trilla to Clinton
IN-VIG-003200
Ammonia Region

Prepared by and return to: Michael Reames
Kaneb Pipe Line Operating Partnership, L. P.
7340 W. 21st St. N., Suite 200
Wichita, KS 67205
LL-30A

LL-30A                          Page 5 of 5

Case 1:20-cv-02813-TWP-TAB   Document 1-1   Filed 10/29/20   Page 22 of 25 PageID #: 26   Filed: 8/27/2020 10:58 AM
Clerk
Vigo County, Indiana

**Vigo Superior Court 6**

STATE OF INDIANA
VIGO SUPERIOR COURT
2020 TERM

Dustin W. Zeigler and Rose Anna L. Zeigler,
Plaintiffs,

v.                                           CAUSE NO. ___**84D06-2008-PL-004348**___

First American Title Insurance Company,
Defendant.

To:    President
First American Title Insurance Company
One First American Way
Santa Ana, CA  92707

## SUMMONS

TO THE ABOVE-NAMED DEFENDANT OR DEFENDANTS:

You have been sued by the persons named "Plaintiffs," in the Court stated above.  The nature of the suit against you is stated in the complaint which is attached to this summons.  It also states the demand which the Plaintiffs have made against you.  You must answer the complaint in writing, by you or your attorney, within twenty (20) days, commencing the day after you receive this summons, (you have twenty-three (23) days to answer if this summons was received by mail), or judgment will be entered against you for what the Plaintiffs have demanded.  If you have a claim for relief against the Plaintiffs arising from the same transaction or occurrence, you must assert it in your written answer.

The following manner of service of summons is hereby designated:

## CERTIFIED MAIL

If not so designated, the Clerk shall cause service to be made by mail.

Jeffrey A. Lewellyn, #15216-34
WILKINSON, GOELLER, MODESITT
  WILKINSON & DRUMMY
333 Ohio Street
Terre Haute, IN  47807
Phone: 812-232-4311

_Bradley A. Newman_ _____ CLERK

HB
_____ DEPUTY

8/27/2020



Vigo Superior Court
Courthouse
33 South Third Street
Terre Haute, IN 47807
(812) 462-3211

## <u>CERTIFICATE OF MAILING</u>

I hereby certify that on the _____ day of _____, 2020, I mailed a copy of this summons and a copy of the complaint to the Defendant, First American Title Insurance Company, by_____ mail, requesting a return receipt, at the address furnished by the Plaintiff.

Dated _____, 2020.              _____ CLERK

## <u>RETURN ON SERVICE OF SUMMONS BY MAIL</u>

I hereby certify that the attached return receipt was received by me showing that the summons and a copy of the complaint mailed to Defendant, First American Title Insurance Company, was accepted by or on behalf of the Defendant on the _____ day of _____, 2020.

I hereby certify that the envelope containing the summons and a copy of the complaint was returned to me showing that the same was not accepted by the addressee on the _____ day of _____, 2020.

                                         _____ CLERK

## <u>ACKNOWLEDGEMENT OF SERVICE</u>

I hereby acknowledge receipt of a copy of the summons and a copy of the complaint in the above-entitled cause at _____ on the _____ day of _____, 2020.

                                         _____
                                                    Signature of Defendant

## <u>RETURN ON SERVICE OF SUMMONS BY SHERIFF</u>

I hereby certify that I have served the within summons:

       (1)  By delivering a copy of the Summons and a copy of the complaint to the Defendant, First American Title Insurance Company, on the _____ day of _____, 2020.

       (2)  By leaving a copy of the summons and a copy of the complaint at _____ _____ on the _____ day of _____, 2020, the dwelling house or usual place of abode of the Defendant, First American Title Insurance  Company, and by mailing a copy of the summons to the Defendant, First American Title Insurance Company, by first class mail, to _____ _____, the last known address of the Defendant.

Sheriff's Fees: $_____          _____
                                         Sheriff of Vigo County, Indiana

Additional:    $_____          By:_____

Vigo Superior Court
Courthouse
33 South Third Street
Terre Haute, IN 47807
(812) 462-3211

STATE OF INDIANA
VIGO SUPERIOR COURT
2020 TERM

Dustin W. Zeigler and Rose Anna L. Zeigler,
     Plaintiffs,

v.                      CAUSE NO.   **84D06-2008-PL-004348**

First American Title Insurance Company,
     Defendant.

### E-FILING APPEARANCE BY ATTORNEY IN CIVIL CASE

**This Appearance Form must be filed on behalf of every party in a civil case.**
1.     The party on whose behalf this form is being filed is:
     Initiating   ___X___    Responding  _____    Intervening  _____; and
     The undersigned attorney and all attorneys on this form now appear in this case for the
     following parties:
     Name of party:       Dustin W. Zeigler and Rose Anna L. Zeigler
     Address of party:    c/o 333 Ohio Street
                          Terre Haute, IN  47807
     Telephone # of party: 812-232-4311

2.     Attorney information for service as required by Trial Rule 5(B)(2):
     Name:           Jeffrey A. Lewellyn     Attorney No.:  15216-34
     Address:        333 Ohio Street         Phone:      (812) 232-4311
                        Terre Haute, IN  47807   Fax No.:    (812) 235-5107
     Email Address:      jalewellyn@wilkinsonlaw.com

**IMPORTANT:**  Each attorney specified on this appearance:
     (a)    certifies that the contact information listed for him/her on the Indiana Supreme
           Court Roll of Attorneys is current and accurate as of the date of this
           Appearance;
     (b)    **acknowledges that all orders, opinions, and notices from the court in this**
           **matter that are served under Trial Rule 86(G) will be sent to the attorney at**
           **the email address(es) specified by the attorney on the Roll of Attorneys**
           **regardless of the contact information listed above for the attorney;**  and
     (c)    understands that he/she is solely responsible for keeping his/her Roll of Attorney
           contact information current and accurate, see Ind. Admis. Disc. R.2(A).
           Attorneys can review and update their Roll of Attorneys contact information on
           the Courts Portal at http://portal.courts.in.gov.

3.     This is a PL case type as defined in Administrative Rule 8(B)(3).

4.      This case involves support issues.  Yes _____ No __X__. *(If yes, supply social security numbers for all family members on a separately attached document filed as confidential information on* **light green paper**. *Use Form TCM-TR3.1-4.)*

5.      This case involves a protection from abuse order, a workplace violence restraining order, or a no-contact order.   Yes _____ No __X__  *(If yes, the initiating party must provide an address for the purpose of legal service but that address should not be one that exposes the whereabouts of a petitioner.)*  The party shall use the following address for purposes of legal service:
        _____        Attorney's address
        _____        The Attorney General Confidentiality program address (contact
                     the Attorney General at 1-800-321-1907 or e-mail address is
                     **confidential@atg.state.in.us**).
        _____        Another address (provide)
        _____
        This case involves a petition for involuntary commitment.  Yes _____   No __X__

6.      If Yes above, provide the following regarding the individual subject to the petition for involuntary commitment:
        a.      Name of the individual subject to the petition for involuntary commitment if it is not already provided in #1 above: _____
        b.      State of Residence of person subject to petition: _____
        c.      At least one of the following pieces of identifying information:
                (i)     Date of Birth _____
                (ii)    Driver's License Number _____
                        State where issued _____ Expiration date _____
                (iii)   State ID Number _____
                        State where issued _____ Expiration date _____
                (iv)    FBI Number _____
                (v)     Indiana Department of Corrections Number _____
                (vi)    Social Security Number is available and is being provided in an attached confidential document   Yes _____    No _____

7.      There are related cases:  Yes _____ No __X__  *(If yes, list on continuation page.)*

8.      Additional information required by local rule: _____
        _____

9.      There are other party members:  Yes _____ No __X__  *(If yes, list on continuation page.)*

10.     This form has been served on all other parties and Certificate of Service is attached:
        Yes _____ No __X__

                                        /s/ Jeffrey A. Lewellyn
                                        Jeffrey A. Lewellyn, #15216-34